# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1312

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Mariano Sicaros-Quintero, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 13, 2008
Filed: March 2, 2009

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MURPHY, Circuit Judges.

_____

LOKEN, Chief Judge.

Mariano Sicaros-Quintero pleaded guilty to possession with intent to distribute fifty grams or more of methamphetamine, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1). He appeals his 108-month prison sentence, arguing that the district court[1] clearly erred in determining drug quantity, applied an erroneous sentencing standard, and imposed a substantively unreasonable sentence. We affirm.

_____

[1]The HONORABLE LAURIE SMITH CAMP, United States District Judge for the District of Nebraska.

Sicaros-Quintero was arrested on January 3, 2007, after selling six ounces of methamphetamine to Jose Florez-Villegas in a controlled buy that resulted from a series of drug trafficking arrests. The day before, police found eighteen grams of methamphetamine during a traffic stop of Mario Ramirez-Garcia. Ramirez-Garcia agreed to cooperate. He identified Steven Palmateer as his principal customer and Florez-Villegas as his supplier. Ramirez-Garcia arranged a controlled sale of six ounces to Palmateer, who was arrested and admitted substantial purchases from Ramirez-Garcia beginning in March or April 2006. Ramirez-Garcia next arranged a controlled buy of six ounces from Florez-Villegas, who agreed to cooperate and identified Sicaros-Quintero as his supplier. During a post arrest interview, Florez-Villegas told Nebraska State Patrol Investigator Keith Bignell that Florez-Villegas had received "3-6 ounces of methamphetamine at a time from Quintero for 5-6 months, 2 times a week." Florez-Villegas then arranged the six-ounce controlled buy that led to Sicaros-Quintero's arrest.

After describing these transactions, the Presentence Investigation Report ("PSR") recommended that Sicaros-Quintero be held accountable for 3,572.1 grams of methamphetamine -- 170.1 grams for the six-ounce controlled buy and 3,402 grams based upon the transactions described by Florez-Villegas in his post-arrest interview. Sicaros-Quintero objected to this drug quantity recommendation. At the contested sentencing hearing, the government introduced, without objection, a lengthy "Synopsis" of the series of arrests and post-arrest cooperating statements prepared by Investigator Bignell on January 9, 2007, plus Bignell's detailed reports of proffer interviews he conducted in February and March with Florez-Villegas, Palmateer, and Francisco Hernandez, another methamphetamine customer of Ramirez-Garcia. The government also introduced a DEA report stating that a confidential informant had purchased one-half pound of methamphetamine from Sicaros-Quintero at Momo's Car Wash in November 2006. Sicaros-Quintero testified that he first met Florez-Villegas on January 3; that the six-ounce controlled buy was the only time he sold methamphetamine to Florez-Villegas; that he did not sell drugs to anyone else during

this period; and that he'd never seen Ramirez-Garcia, Palmateer, or Hernandez. Sicaros-Quintero admitted that a Momo's Car Wash card was found in his wallet when he was arrested on January 3, 2007, but denied he had ever been there.[2]

After hearing argument, the district court found that Sicaros-Quintero's testimony was not credible, and that the post-arrest statements and proffers recorded by Investigator Bignell were credible because "[t]hey tend to corroborate each other, and they are further corroborated by the nontestimonial evidence." The court adopted the drug quantity facts in the PSR as its findings and determined that the base offense level was 34[3] and the guidelines sentencing range was 108 to 135 months in prison. The court stated that the Guidelines are now advisory, and that it had considered all the sentencing factors in 18 U.S.C. § 3553(a) but did not find any that "weighs in favor of sentencing below the guideline range." Accordingly, the court sentenced Sicaros-Quintero to 108 months in prison, "the lowest end of the guideline range."

On appeal, Sicaros-Quintero first argues that the district court's drug quantity finding was clearly erroneous because most of the 3,572.1 grams recommended by the PSR were based solely on the statement of an uncorroborated witness, Florez-Villegas, who did not testify and who had a motive to exaggerate. We reverse a drug quantity determination "only if the entire record definitely and firmly convinces us that a mistake has been made." United States v. Minnis, 489 F.3d 325, 329 (8th Cir. 2007) (quotation omitted), cert. denied, 128 S. Ct. 1097 (2008).

---

[2]The DEA reported that the confidential informant and two county deputies who observed the transaction at Momo's Car Wash identified Sicaros-Quintero in a post-arrest line-up.

[3]When the total quantity of methamphetamine is more than 1,500 grams but less than 5,000 grams, the base offense level under the now-advisory Guidelines is 34. See U.S.S.G. § 2D1.1(a)(3), (c)(3).

When the amount of drug seized by the government does not reflect the scale of the drug trafficking offense, as in this case, "the court shall approximate the quantity of the controlled substance" for sentencing purposes. U.S.S.G. § 2D1.1, comment. (n.12). "The court may make a specific numeric determination of quantity based on imprecise evidence." United States v. Roach, 164 F.3d 403, 413 (8th Cir. 1998). It "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

The district court first discredited Sicaros-Quintero's implausible testimony that he sold drugs only on the one occasion he was caught. Witness credibility is "quintessentially a judgment call and virtually unassailable on appeal." United States v. Hart, 544 F.3d 911, 916 (8th Cir. 2008) (quotation omitted). In estimating the total quantity properly attributable to this offense, the court then found that the post-arrest statements and proffer interviews of the other participants in a series of related transactions tended to corroborate each other as to the scale of Sicaros-Quintero's distribution offense. The court adopted as its drug quantity finding the PSR's conservative estimate of the quantity Florez-Villegas reported buying from Sicaros-Quintero in the six months prior to their arrests.[4] The court's method of approximating drug quantity was consistent with the guidelines commentary and our prior cases. Its ultimate base offense level finding was not clearly erroneous. See United States v. Burnette, 518 F.3d 942, 945-46 (8th Cir.) (standard of review), cert. denied, 129 S. Ct. 138 (2008).

Sicaros-Quintero next argues that the district court committed procedural error under Gall v. United States, 128 S. Ct. 586, 596-97 (2007), and Rita v. United States, 127 S. Ct. 2456 (2007), when it "used the guideline range as the default sentence" and

---

[4]Five-to-six months is at least 20 weeks; 2 buys per week equal 40 buys; 40 buys of 3 ounces each equal 120 ounces; 120 ounces convert to 3,402 grams.

paid only "lip service" to the other statutory sentencing factors in 18 U.S.C. § 3553(a). This contention is without merit. A district court at sentencing need not "categorically rehearse each of the section 3553(a) factors on the record . . . as long as it is clear that they were considered." United States v. Austad, 519 F.3d 431, 436 (8th Cir. 2008) (quotation omitted). The court did not erroneously invoke "a legal presumption that the Guidelines sentence should apply." Rita, 124 S. Ct. at 2465. It "simply found [Sicaros-Quintero's] case to be typical and his arguments insufficient to warrant a sentence lower than that recommended by the Guidelines." United States v. Robinson, 516 F.3d 716, 718 (8th Cir. 2008). As Rita and Gall make clear, there was no procedural error.

Finally, Sicaros-Quintero argues that his sentence is substantively unreasonable because it is "greater than necessary to promote the goals of 18 U.S.C. § 3553(a)" given that he is a non-violent "low-level offender" who "provided methamphetamine to two people at the most." Gall made clear that the determination of a reasonable sentence is committed to the district court's discretion in all but the most unusual cases. We accord Sicaros-Quintero's 108-month sentence at the bottom of the advisory guidelines range a presumption of reasonableness on appeal. See United States v. Toothman, 543 F.3d 967, 970 (8th Cir. 2008). There was no abuse of discretion.

The judgment of the district court is affirmed.

_____